## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VASILIKI MITCHELL, Individually and on Behalf of All Other Persons Similarly Situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:18-CV-00879-RC** |
| **CRAFTWORKS RESTAURANTS & BREWERIES, INC.[1], d/b/a GORDON BIERSCH BREWERY RESTAURANT,** | |
| **Defendant.** | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT

Defendant Craftworks Restaurants & Breweries Group, Inc. d/b/a Gordon Biersch Brewery Restaurant ("Defendant" or "Craftworks "), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, submits this Memorandum of Points and Authorities in Reply to Plaintiff Vasiliki Mitchell's ("Plaintiff" or "Mitchell") Opposition to Defendant's Motion to Compel Arbitration and Dismiss Complaint.

## I.   INTRODUCTION

Through her 33-page Opposition, Plaintiff engages in an "everything but the kitchen sink" approach in an effort to avoid her arbitration commitment.  She attempts to convolute and confuse the issues by proffering a multitude of irrelevant and misleading arguments in a desperate attempt to avoid her contractual obligations. Plaintiff cannot be allowed to do so. In reality, this is a simple and straightforward issue - Plaintiff electronically executed a binding and

---

[1] Plaintiff incorrectly named CraftWorks Restaurants & Breweries, Inc. as a Defendant in this matter. The correct corporate entity is Defendant CraftWorks Restaurants & Breweries Group, Inc.

enforceable Mutual Arbitration Agreement (the "Arbitration Agreement") which must be enforced in this case.

Importantly, Plaintiff does not contest that she electronically signed the Arbitration Agreement. Plaintiff simply claims she does not remember doing so. However, Plaintiff does recollect electronically signing other employment documents executed at the same time as the Arbitration Agreement. The Arbitration Agreement, which Plaintiff executed using her own unique password, expressly requires her to submit any dispute arising out of or related to her employment with Craftworks to arbitration solely in her individual capacity. Since she does not unequivocally deny signing the arbitration agreement, she is unable to obtain a jury trial or discovery on this issue, nor is her failure of memory sufficient to create a disputed issue of fact. In the end, if this Court determines that Plaintiff signed an agreement to arbitrate, its inquiry should end there, and this case should be dismissed, with Plaintiff's claims compelled to arbitration.

Contrary to Plaintiff's contentions otherwise, the Arbitration Agreement meets the requirements to compel arbitration in this case under the Federal Arbitration Act ("FAA"). Craftworks thus moves this Court for an order compelling Plaintiff to do what she agreed to do – submit this matter to binding arbitration.

## II.     FACTS IN RESPONSE TO OPPOSITION

### A.     Plaintiff Executed Craftworks' Onboarding Documents Using Her Unique Password

As part of the onboarding process at the commencement of employment, Craftworks provides employees with access to various documents including, the Team Member Handbook and Team Member Handbook Acknowledgment, the Mutual Arbitration Agreement, the Food Handler Illness Reporting Agreement, the Foundation Payroll Deduction Authorization,

Craftworks' Meal and Rest Policy, and a Safety Orientation Checklist. (Declaration of Lori Fulmer in Support of Defendant's Reply ¶ 3 (hereinafter "Fulmer Reply Decl."), attached hereto as Exhibit 1).  Each employee creates their own account which they access using their own personal unique password. (*Id.* ¶ 4).  Each employee is provided their onboarding documents through the account they create which can be accessed only with their unique password. (*Id.* ¶ 4). When each document is signed by the employee, the system creates a time stamp and electronic signature. (*Id.* ¶ 4).

To create an account, from the Craftworks' careers website, which can be found at http:/craft.careers.net, an applicant clicks the "Apply" button next to the job posting in which they are interested. (*Id.* ¶ 5, Ex. A at 1).  The applicant then clicks "Apply Now". (*Id.*). The applicant will then be prompted to create an account with a unique "userID" and password. (*Id.*). The traditional "userID" is the applicant's telephone number. The applicant determines the password at the same time the account is created. (*Id.*). Once an account is created, the applicant can complete a job application. (*Id.* ¶ 5, Ex. A at 2). After the applicant applies for a position, the application will appear under "My Applications" in the applicant's account. (*Id.* ¶ 5, Ex. A at 3).

After the applicant has been hired, they log back into their account to complete the onboarding electronic paperwork. *Id.*). An applicant is prompted to complete the onboarding documents upon log in. (*Id.* ¶ 6, Ex. A at 3). After clicking "OK," the applicant sees a list of onboarding documents. (*Id.* ¶ 6, Ex. A at 4 ). The applicant must open each document to acknowledge that they reviewed it. (*Id.* ¶ 6, Ex. A at 3-4). Certain documents, such as the Mutual Arbitration Agreement, must be signed by the applicant. (*Id.* ¶ 6, Ex. A at 4). To sign a document, the applicant clicks on a white "Digitally Sign" button. (*Id.*). A pop-up window appears, requiring the applicant to then enter their unique password for the account. (*Id.*). Only

after an applicant enters their unique password can they click the red "Digitally Sign" button. (*Id.*).

When electronically signing a document, the applicant acknowledges understanding that the electronic signature will be treated the same as a written signature and that s/he may print and sign the form as an alternative to signing it electronically as follows:

> Under penalty of perjury, I certify that the information which I have provided is true and correct. I understand and accept that this electronic consent process shall be treated the same as my written signature on paper. I also understand that I have been provided with the opportunity to print these forms as an alternative or in addition to this electronic consent process.

(*Id.* ¶ 7, Ex. A at 5). Once the document is electronically signed, the date and time stamp of the electronic signature are recorded on the document. (*Id.*).

### B.    An Agreement to Arbitrate Was Formed Between Plaintiff and Craftworks

Plaintiff Vasiliki Mitchell was required to create a unique "userID" and password when she applied for a job with Craftworks. (Fulmer Reply Decl. ¶ 8). Once hired, Plaintiff used her unique "userID" and password to log into her Craftworks' account to complete the electronic onboarding paperwork. (*Id.*). With regard to the documents which required a signature, including the Mutual Arbitration Agreement, Plaintiff was required to click on the white "Digitally Sign" button, enter her unique password, and then click on the red "Digitally Sign" button. (*Id.*).

As Plaintiff admits in her declaration, "[i]n late October and early November 2016, I completed many 'onboarding' forms in order to initiate my employment with Gordon Biersch, including payroll forms, tax forms, background and personal information forms, and acknowledgements of various company policies and rules." (Mitchell Decl. ¶ 3). "I [Plaintiff] recall signing certain of these onboarding documents electronically . . . ." (*Id.*). In particular, Mitchell electronically signed the Payroll Enrollment Authorization Agreement at 10:00:27 a.m. on October 20, 2016 (Fulmer Reply Decl. ¶ 9, Ex. B), Craftworks' Appearance Standards

Agreement at 10:15:03 a.m. on October 20, 2016 (*Id.*   ¶ 9, Ex. C), Craftworks' Food Handler

Illness Reporting Agreement at 10:27:39 on October 20, 2016 (*Id.* ¶ 9, Ex. D), the Mutual

Arbitration Agreement at 10:29:29 a.m. on October 20, 2016 (Fulmer Decl. Ex. A), the

Foundation Payroll Deduction Authorization at 10:32:00 a.m. on October 20, 2016 (Fulmer

Reply Decl. ¶ 9, Ex. E), and the Emergency Contact Information 12:05:31 p.m. on October 20,

2016 (Fulmer Decl. ¶ 9, Ex. F). When Plaintiff electronically signed the Arbitration Agreement,

it was stamped with Plaintiff's unique name along with the date and time she executed it.

(Fulmer Decl. Ex. A).

## III.   PLAINTIFF AND CRAFTWORKS ENTERED INTO A VALID AND ENFORCEABLE CONTRACT TO ARBITRATE THIS EMPLOYMENT DISPUTE

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, the Court should

order Plaintiff to arbitrate her claims and dismiss the Complaint without prejudice. In her

Opposition, Plaintiff tries to avoid the plain language of the Arbitration Agreement to which she

agreed by challenging the validity of the agreement to arbitrate and the delegation clause

contained therein. As discussed in detail below, any such argument must fail, and should be

addressed by the arbitrator, if at all.

### A.   Craftworks Has Proven the Existence of an Agreement to Arbitrate

Under District of Columbia law, an enforceable contract is formed where there is a

"meeting of the minds" as to all material terms. *Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740,

746 (D.C. Cir. 2000). "A signature . . . indicates 'mutuality of assent' and a party is bound by the

contract unless he or she can show special circumstances relieving him or her of such an

obligation." *Emeronye v. CACI Int'l*, 141 F. Supp. 2d 82, 86 (D.D.C. 2001); *see also Davis v.*

*Winfield*, 664 A.2d 836, 838 (D.C. 1995) ("Mutual assent to a contract, often referred to as a

'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement.").

The Arbitration Agreement meets the requirements of District of Columbia's contract law and is a valid and enforceable agreement by Plaintiff to arbitrate her claims.

Here, Plaintiff logged into Craftworks' site, entered her own unique "userID" and password – known only to her – to access the Arbitration Agreement. (Fulmer Reply Decl. ¶¶ 8-9). The Arbitration Agreement was provided to Plaintiff as its own, standalone document.[2] (Fulmer Reply Decl. ¶¶ 5, 8, Ex. A at 4). Plaintiff had to click on the title of the document, "Mutual Arbitration Agreement", to open it. (*Id.*). Plaintiff then spent approximately two minutes reading the one-page Arbitration Agreement.[3] (Fulmer Reply Decl. Ex. B; Fulmer Decl. Ex. A). After Plaintiff read the Arbitration Agreement, she then electronically signed it. (Fulmer Decl. Ex. A). Under District of Columbia law, Plaintiff's electronic signature on the Arbitration Agreement, using her own unique passcode, indicates her mutual assent to its terms.

Indeed, to electronically sign the Arbitration Agreement, Plaintiff had to click on the white "Digitally Sign" button. (Fulmer Reply Decl. ¶¶ 5, 8, Ex. A at 4). A pop-up window then appeared, and Plaintiff was required to once again enter her own unique passcode known just to her. (*Id.*). Only after Plaintiff entered her unique password was she able to click the red "Digitally Sign" button to electronically sign the Arbitration Agreement. (*Id.*). According to the time stamp on Plaintiff's Arbitration Agreement, she electronically signed it at 10:29:29 a.m. on October 20, 2016. (Fulmer Decl. Ex. A).

Importantly, Plaintiff does not challenge the authenticity of her electronic signature nor does she claim the signature is not hers. To the contrary, Plaintiff admits that "[i]n late October

---

[2] Exhibit A to Fulmer's Declaration includes screen shots of the application and onboarding process. Page 4 of the screen shots provides a list of the onboarding documents presented to Plaintiff and establishes that the Arbitration Agreement was provided as its own separate and distinct document from the other onboarding documents.

[3] Plaintiff electronically signed the Food Handler Illness Reporting Agreement at 10:27:29 a.m. on October 20, 2016. Plaintiff then signed the Arbitration Agreement at 10:29:29 a.m. on October 20, 2016. (Fulmer Reply Decl. Ex. D; Fulmer Decl. Ex. A).

and early November 2016, I completed many 'onboarding' forms in order to initiate my employment with Gordon Biersch, including payroll forms, tax forms, background and personal information forms, and acknowledgements of various company policies and rules." (Mitchell Decl. ¶ 3). "I recall signing certain of these onboarding documents electronically . . . ." (*Id*. § 4). Plaintiff simply has "no recollection" of the Arbitration Agreement. (*Id*. ¶ 6). However, Plaintiff signed the Arbitration Agreement at the same time she signed the other onboarding documents she concedes she signed.[4] (Fulmer Reply Decl. Exs. B-F; Fulmer Decl. Ex. A; Mitchell Decl. ¶ 3).

The primary case Plaintiff relies on in her desperate attempt to avoid the contractually binding terms of the Arbitration Agreement (to which she assented through her electronic signature using her own unique passcode) does nothing to help her. Initially, *Brent v. Priority 1 Automotive Group*, 98 F. Supp. 3d 833 (2015) is a case from the District of Maryland that is not binding on this court. Moreover, in *Brent* the plaintiff challenged the validity of any arbitration agreement because she claimed she never received a copy of the employee handbook that contained it nor did she sign any acknowledgement of such receipt. (*Id*.) Here, no such facts exist. Quite the opposite, this case does not involve an arbitration clause in an employee handbook. It involves a standalone contract that is separate and distinct from the other onboarding documents provided to Plaintiff. Further, Plaintiff does not challenge the fact she signed the Arbitration Agreement; she simply claims that she does not remember doing so.

---

[4] Mitchell electronically signed Craftworks' Payroll Enrollment Authorization Agreement at 10:00:27 a.m. on October 20, 2016 (Fulmer Reply Decl. Ex. B), the Appearance Standards Agreement at 10:15:03 a.m. on October 20, 2016 (*Id*. Ex. C), the Food Handler Illness Reporting Agreement at 10:27:39 on October 20, 2016 (*Id*. Ex. D), the Mutual Arbitration Agreement at 10:29:29 a.m. on October 20, 2016 (*Id*. Ex. A), the Foundation Payroll Deduction Authorization at 10:32:00 a.m. on October 20, 2016 (*Id*. Ex. E), and the Emergency Contact Information at 12:05:31 p.m. on October 20, 2016 (*Id*. Ex. F).

In short, Plaintiff demonstrated her mutual assent to the terms of the contract when she clicked on and opened the separate and distinct Arbitration Agreement using her own unique "userID" and her password known only to her, clicked on the white "Digitally Sign" button, entered her personal password a second time, and then clicked on the red "Digitally Sign" button. As a result, Plaintiff has failed to create a disputed issue of material fact and therefore Plaintiff is bound to the terms of the Arbitration Agreement signed by her.

**B.      Plaintiff Agreed to Enter Into Transactions By Electronic Signature**

The District of Columbia gives legal recognition to electronic signatures. D.C. Code § 28-4906. Section 28-4901 defines an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* The statute provides as follows:

> (a)  An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in *any* manner, including a showing of the efficacy of *any* security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

> (b)  The effect of an electronic record or electronic signature attributed to a person under subsection (a) of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

D.C. Code § 28-4901, emphasis added.

Here, Craftworks applied multiple security procedures to ensure that the person who electronically signed the Arbitration Agreement is the person against whom it is being enforced. Specifically, Plaintiff created a unique account with her own "userID" and a personal password created by her and known only to her. Using her unique "userID" and password Plaintiff logged into her account to access the Arbitration Agreement. Moreover, Craftworks had Plaintiff enter her password a second time upon clicking the white "Digitally Sign" button to verify it was

Plaintiff signing the Arbitration Agreement before it allowed her to click the red "Digitally Sign" button to execute the agreement. The statute sets a low bar, only requiring *any* security procedure. Here, Craftworks' security procedure is more than sufficient to verify it was Plaintiff who electronically signed the Arbitration Agreement.

Despite this, Plaintiff tries to avoid the binding effect of the Arbitration Agreement by mistakenly claiming she did not agree to sign any documents electronically. This, however, belies the plain language of the electronic signature certification she agreed to each and every time she electronically signed a document with Craftworks. Specifically, under penalty of perjury, Plaintiff certified that "I understand and accept that this electronic consent process shall be treated the same as my written signature on paper. I also understand that I have been provided with the opportunity to print these forms as an alternative or in addition to this electronic consent process." (Fulmer Reply Decl. ¶¶ 5, 7, Ex. A at 5). Thus, this argument does nothing to assist Plaintiff in her attempt to avoid the fact she is contractually bound to arbitrate this case on an individual basis. *See Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 98 (D.D.C. 2013) ("that Fox received and signed the Agreement electronically does not render it unconscionable: 'a contract . . . may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation,'" quoting the federal E-SIGN Act, 15 U.S.C. § 7001(a)).

A look at the electronic signature case law from other states – all of which have adopted the Uniform Electronic Transactions Act[5] – dictates that a signature relating to such a transaction in a FAA-covered agreement may not be denied legal effect or enforceability solely because it is

---

[5] The Uniform Electronic Transactions Act ("UETA") is one of the several United States Uniform Acts proposed by the National Conference of Commissioners on Uniform State Laws. Forty-seven states, including South Carolina, California, North Carolina, as well as the District of Columbia, have adopted the UETA. Its purpose is to harmonize state laws concerning retention of paper records and the validity of electronic signatures.

in electronic form, and therefore supports a finding that Plaintiff's electronic signature in this case binds her to the terms of the Arbitration Agreement. *See Dimery v. Convergys Corp.*, Civil Action No. 4:17-cv-00701-RBH, 2018 U.S. Dist. LEXIS 50555, at *8, n.2 (D.S.C. Mar. 26, 2018) ("Courts have previously held that an electronic signature of acknowledgement of the receipt of an employee handbook containing an arbitration provision constitutes valid acceptance of an [arbitration] agreement.") (citation omitted); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-cv-1938-BAM, 2016 U.S. Dist. LEXIS 63693, at *9 (E.D. Cal. May 12, 2016 (holding that "Plaintiff consented to the arbitration agreement when she signed the acknowledgement of her receipt of the Employee Handbook."); *Jackson v. Univ. of Phx., Inc.*, No. 5:13-cv-736-BO, 2014 U.S. Dist. LEXIS 21175, at *3 (E.D.N.C. Feb. 17, 2014) (finding a valid arbitration agreement where "plaintiff not only electronically acknowledged receipt of defendant's 2011 employee handbook, including the arbitration agreement, but he also electronically acknowledged defendants 2008, 2009, and 2010 employee handbooks all of which contain similar versions of the arbitration agreement.")

### C.     The Arbitration Agreement Is Supported By Consideration

In her Opposition, Plaintiff asserts through a single conclusory sentence without any legal support that ". . . Defendant solely relies on purported mutuality of obligation to be bound by the terms of the purported Agreement as its evidence of consideration to support an enforceable agreement that is illusory under applicable law." (Pls.' Opp. 17-18, ECF No. 15). Simply put, Plaintiff is wrong. Mutual agreements, such as the one at issue, are independently sufficient forms of consideration. *See Shatteen v. Omni Hotels Mgmt. Corp.,* 113 F. Supp. 3d 176, 181 (D.D.C. 2015); *see also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir. 2003).

Additionally, the United States Supreme Court has held that the mutual promises and advantages of arbitration, rather than litigating in court, constitute consideration for an

Arbitration Agreement. *See Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."); *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001) ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.")

Accordingly, the existence of a binding contract to arbitrate on an individual basis is readily apparent.  Plaintiff entered into a valid, written Arbitration Agreement which requires her to arbitrate any dispute with Craftworks. Thus, Defendant's motion to compel arbitration should be granted in this case.

**D.     Plaintiff Is Not Entitled to Discovery and a Trial**

Plaintiff claims that she is entitled to discovery on the issue of whether the parties formed an enforceable agreement to arbitrate. (Pls.' Opp. 16-17). The law dictates otherwise.

Plaintiff is not entitled to discovery in this case because there is no genuine issue of material fact:

> '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Here, the evidence is not contradicted. Instead, Plaintiff simply asserts that she does not *remember* signing the Arbitration Agreement. However, she admits that she signed various other "onboarding" documents electronically in October of 2016. The evidentiary materials submitted

by Craftworks show that the Arbitration Agreement was electronically signed by Plaintiff at 10:29:29 a.m. on October 20, 2016 – in between her signing other onboard documents she *admits* she signed.  This type of selective memory by Plaintiff is not sufficient to create a disputed issue of fact.  *See Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (the right to a jury trial under Section 4 of the FAA is "not automatic," but "[r]ather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support.") citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)   Absent an unequivocal denial, a mere "factual dispute" is not enough to request a jury trial under Section 4, and, instead, "the party requesting a jury trial under Section 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law . . . . In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Dickey's*, 807 F.3d at 564.  Thus, there is no genuine issue of material fact in this case – the record taken as a whole establishes that Plaintiff electronically signed the Arbitration Agreement. As a result, no discovery is needed in this case.

Moreover, Plaintiff does not contest that the Arbitration Agreement covers the claims alleged in Plaintiff's Complaint. As a result, once this Court determines that a valid and enforceable contract exists, no further analysis is necessary to grant Craftworks' motion to compel arbitration in this case.

## IV.   A VALID CONTRACT HAS BEEN ESTABLISHED; ACCORDINGLY ALL OTHER DISPUTES MUST BE SUBMITTED TO THE ARBITRATOR

Craftworks has established that a valid and enforceable Arbitration Agreement has been entered into between it and Plaintiff. All other disputes – including the validity of the class action waiver – must be submitted to the arbitrator pursuant to the clear intentions of the parties. In this

regard, neither the Supreme Court nor the D.C. Circuit has addressed whether the availability of class arbitration is a question of arbitrability to be resolved by the court or whether its resolution is reserved for the arbitrator. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 ("[T]his Court has not yet decided whether the availability of class arbitration is a question of arbitrability." (citing *Stolt-Nielsen*, 599 U.S. at 680). All circuits that have weighed in however hold that the question of whether an arbitration agreement permits classwide arbitration should be resolved by the arbitrator if, as here, the parties clearly and unmistakably delegated the question. *Reed Elsevier, Inc. ex rel. LexisNexisDiv. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013); *see also Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) (concluding that the availability of class arbitration is a "substantive question of arbitrability" to be determined by the courts, unless the parties "clearly and unmistakably delegate the question to an arbitrator"); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 329 (3d Cir. 2014) ("[T]he availability of classwide arbitration is a substantive 'question of arbitrability' to be decided by a court absent clear agreement otherwise.").

Here, Craftworks and Plaintiff have clearly and unmistakably delegated all questions and disputes regarding both arbitrability and the interpretation, applicability and enforceability of the agreement and its provisions, which includes the class action waiver, to the arbitrator. Specifically, the Arbitration Agreement reads as follows:

> <u>Arbitrability.</u> All questions and disputes regarding arbitrability shall be determined in accordance with the Federal Arbitration Act, 9 U.S.C. Sections 1-16, and the arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or part of this agreement is void or voidable. If any part of this agreement is found to be unenforceable, the other parts shall remain fully valid and enforceable.

(Fulmer Decl. Ex. A).

13

A valid and enforceable Arbitration Agreement was entered into between Plaintiff and Craftworks. Pursuant to the clear and unmistakable intentions of both Craftworks and Plaintiff, all other disputes – including the validity of the class action waiver – must be delegated to the arbitrator. As a result, just like in *Sakyi v. Estee Lauder Cos.*, Civil Action No. 17-1863 (BAH) 2018 U.S. Dist. LEXIS 69322, \*22-23 (D.D.C. Apr. 15, 2018), relied on by Plaintiff, this Court should reserve resolution of the applicability of the class action waiver to the arbitrator.

In *Sakyi,* the defendant moved the court to enforce a class waiver provision in an arbitration agreement. *Id.* In response, plaintiff contended that the agreement was invalid due to its inclusion of a clause that makes class adjudication unavailable. *Id.* In granting the defendant's motion to compel, the court simply determined that the parties intended to arbitrate the issue so it left resolution of the class waiver to the arbitrator. *Id.* This Court should find likewise and leave resolution of the class waiver to the arbitrator.

## A.      Plaintiff's Attempt to Invalidate This Agreement Must Fail

Plaintiff attempts to invalidate the agreement by contesting Craftworks' actions when bringing this motion pursuant to the delegation clause, by noting the language in the Arbitration Agreement stating that "the arbitrator shall have the exclusive authority to resolve any *dispute* relating to the interpretation, applicability, enforceability or formation of this agreement." (Pls.' Opp. 24-26) (emphasis added). Any such attempt must fail. At the time Craftworks moved to compel arbitration, it was unknown whether any dispute was present. Craftworks' counsel sought Plaintiff's position on arbitration pursuant to the terms of the Arbitration Agreement prior to filing the motion to compel, but never received a definitive response, despite multiple requests. (Henninger Decl. ¶¶ 3-4). Accordingly, nothing Craftworks did in asking to compel arbitration can be construed as contrary to the delegation clause because Craftworks did not know whether a dispute existed at the time the motion was made.

Through the instant motion, Craftworks seeks nothing more than to move this matter to arbitration pursuant to the express terms of the Arbitration Agreement.  As the clear and unmistakable intentions of both Craftworks and Plaintiff dictate, all other issues should be left to the arbitrator to decide.  None of Craftworks' actions are inconsistent with its request to move this matter to arbitration.  Plaintiff's disingenuous contention that the Arbitration Agreement required "resol[ution] by mutual discussion between [Plaintiff and Defendant]," which Plaintiff alleges Craftworks somehow breached by filing the instant motion to compel arbitration (Pls.' Opp. 25-26) is entirely without merit. It was *Plaintiff* – not Craftworks – that filed the instant lawsuit in violation of the Arbitration Agreement. Craftworks had no knowledge that Plaintiff was filing a lawsuit against it, and Craftworks was not provided the opportunity to demand mediation or other informal resolution before *Plaintiff* filed suit. If anyone breached the Arbitration Agreement, it was *Plaintiff* – not Craftworks – that did so by: (1) filing a lawsuit and not binding arbitration; and (2) filing a lawsuit without first attempting to informally resolve this case.[6]

### B.   Plaintiff's Argument That the Handbook Provisions Invalidate the Standalone Arbitration Agreement Is Entirely without Merit

Plaintiff spends seven pages of the Opposition providing this Court with page upon page of irrelevant cases which involve arbitration provisions contained in employee handbooks with revocation language. Yet none of those cases are applicable here. While Craftworks does have an Employee Handbook that reiterates the terms of the Arbitration Agreement, Craftworks is not moving this Court to enforce any provision in the Employee Handbook against Plaintiff in this case.  Instead, Plaintiff is moving this Court to enforce a valid Arbitration Agreement which is a

---

[6] Moreover, "arbitrators — not courts — must decide whether a condition precedent to arbitrability has been fulfilled." *Dickey's*, 807 F.3d at 565 (citing the United State Supreme Court's decisions in *BG Group PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1207-08, (2014) and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85-6 (2002)).

*standalone document*, separate and distinct from the Employee Handbook. (Fulmer Decl. Ex. A).

Indeed, as the court in *Sapiro v. VeriSign*, 310 F. Supp. 2d 208 (D.D.C. 2004) – relied on by

Plaintiff – explains, an employee handbook does not negate the terms of a valid and enforceable

arbitration agreement. *Id.* at 212.   Thus, the Plaintiff's argument premised on Craftworks'

employee handbook is nothing more than a red herring. It is the Arbitration Agreement that is at

issue in this case, not any other documents or parol evidence.

In her Opposition, Plaintiff relies heavily on *Davis v. Joseph J. Magnolia, Inc.*, 640 F.

Supp. 2d 38 (D.D.C. 2009). However, *Davis* does not apply to this case. In *Davis,* cross-motions

for summary judgment (not a motion to compel) were at issue on the question of whether the

parties entered into a binding agreement to arbitrate based upon an arbitration provision

contained in an employee manual which included a reservation of rights. *Id.*   This case does *not*

involve an arbitration provision contained in an employee manual.   Instead, this case involves a

separate and distinct Arbitration Agreement which contains no reservation of rights. Indeed,

contrary to Plaintiff's representations otherwise, the Arbitration Agreement at issue does *not*

include any provision that allows Craftworks to unilaterally revoke, alter, or suspend it. (Fulmer

Decl. Ex. A).

Unlike *Davis,* the Arbitration Agreement between Plaintiff and Craftworks does not

include any language which renders Craftworks' performance optional. Moreover, as discussed

in detail above, the Arbitration Agreement is supported by consideration. Thus, *Davis* does not

apply in this case. The Arbitration Agreement at issue is not illusory. It does not contain any

language that allows Craftworks to unilaterally revoke, modify, or suspend it. To the contrary,

the Arbitration Agreement is *mutual* by its very definition, and it is binding equally on both

Plaintiff and Craftworks.

V.     **PLAINTIFF CANNOT USE THE VENUE OF THE ARBITRATON TO AVOID HER CONTRACTUAL OBLIGATIONS**

Plaintiff attempts to avoid her contractual obligations by arguing that this Court cannot order arbitration outside of its jurisdiction, and Craftworks cannot unilaterally decide arbitration should take place within this Court's jurisdiction. (Pls.' Opp. 31-32). Any such argument is disingenuous at best. Initially, the only cases relied upon by Plaintiff to support her flawed argument are *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131 (10th Cir. 2005), a Tenth Circuit decision, and *Elox Corp. v. Colt Industries, Inc.*, 952 F.2d 395 (4th Cir. 1991), an unpublished case from the Fourth Circuit, neither of which are binding on this Court. As a result, Plaintiff provides no binding case law which prevents this Court from ordering arbitration to take place outside of its jurisdiction.

Moreover, Plaintiff has never raised the issue of venue with Craftworks in any discussion involving arbitration. As the plain language of the Arbitration Agreement states, Plaintiff and Craftworks can mutually agree to arbitration within this Court's jurisdiction: "The arbitration will be conducted in Denver County, Colorado or Hamilton County, Tennessee, ***unless otherwise mutually agreed***." (Fulmer Decl. Ex. A) (emphasis supplied). Craftworks is agreeable to arbitration within this Court's jurisdiction if Plaintiff likewise agrees. As a result, there does not appear to be a dispute with regard to the venue of arbitration. Regardless, based upon the delegation clause in the Arbitration Agreement, any dispute with regard to venue must be resolved by the arbitrator. (Fulmer Decl. Ex. A). As a result, this Court should grant Craftworks' motion to compel arbitration and either dismiss or stay this case. All other disputes should be resolved by the arbitrator chosen pursuant to the terms of the Arbitration Agreement.

## VI.    CONCLUSION

The FAA requires that Plaintiff resolve her FLSA and state wage and hour claims through binding arbitration pursuant to the Parties' Arbitration Agreement. Accordingly, Craftworks respectfully requests that this Court issue an order compelling arbitration of Plaintiff's claims.

Dated:  July 24, 2018

Respectfully submitted,

*/s/ S/ Libby Henninger*
S. Libby Henninger (Bar No.: 976352)
lhenninger@littler.com
Joshua B. Waxman (Bar No.:  482135)
jwaxman@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW
Suite 400
Washington, DC  20006-4046
202.842.3400 (telephone)
202.842.0011 (facsimile)

*Counsel for Defendant Craftworks Restaurant*
*& Breweries Group, Inc., d/b/a Gordon*
*Biersch Brewery Restaurant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2018, a copy of the foregoing Defendant's Motion to Compel Arbitration and Dismiss Complaint, accompanying Memorandum of Points and Authorities in Support thereof, and Proposed Order was served, electronically, via ECF filing, upon:

Charles Andrew Head
Bethan A. Hilbert
Head Law Firm, LLC
4422 N. Ravenswood Avenue
Chicago, IL 60640
(404) 924-4151

Seth Richard Lesser
Bernstein Litowitz Berger & Grossman, LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

Nicholas A. Migliaccio
Jason Samuel Rathod
Migliaccio & Rathod LLP
412 H Street, NE
Suite 302
Washington, DC 20002

*Counsel for Plaintiff*

 */s/ S. Libby Henninger*
S. Libby Henninger